**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CARMEL MURPHY, | No. 2:11-CV-1523-JAM-CMK-P |
|     Petitioner, | |
|   vs. | FINDINGS AND RECOMMENDATIONS |
| WALTER MILLER, | |
|     Respondent. | |
|                                 / | |

      Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 9), respondent's answer (Doc. 26), and petitioner's reply (Doc. 29).

///
///
///
///
///
///

# I. BACKGROUND

A.  **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> About 10:30 p.m. one night in February 2005, Rogers drove Monica Bracamonte (who was the sister of Roger's brother's girlfriend) to the store in his Cadillac to get some milk for Bracamonte's niece. At the store, Rogers received a phone call from Howard to pick him up at Howard's house and take him to the park to meet Howard's girlfriend. After picking up Howard, Rogers drove with Howard and Bracamonte to the park. At the park, Howard walked to a nearby building, talked on the phone for a few minutes, came back to the car, and asked Rogers to get out. Rogers complied, and he and Howard walked around the building out of Bracamonte's sight. Less than five minutes later, Bracamonte heard two gunshots.
> About 10 minutes after the gunshots, Howard returned to the car with Murphy, and he asked Bracamonte to get out of the car. Thinking nothing of it, Bracamonte complied. Murphy got in the car where Bracamonte had been sitting. Howard told Bracamonte that Rogers wanted to speak with her. As Bracamonte walked to the building with Howard behind her, she heard a clicking noise and something fall to the ground. She turned around and saw Howard, who was now wearing gloves, pick up a gun off the ground and place it under his arm. He told her to go back to the car, and she complied.
> Howard drove Rogers's Cadillac a couple blocks to where Murphy's Jeep was parked. Murphy got out of the Cadillac and into her Jeep. Murphy followed Howard as he dropped off Bracamonte at Bracamonte's sister's apartment. As Bracamonte got out of the Cadillac, she heard Murphy say, "Pop her too." When Bracamonte got to the apartment, she told her sister and Rogers's brother what had happened. Roberts's brother tried to call Rogers but received no answer.
> Rogers's brother and Bracamonte's sister went to the park and found Rogers's dead body. He had been shot in the back of the head and in the abdomen. His pants were pulled down and one of his pockets turned inside out.
> Howard and Murphy were both arrested on February 10, 2005. They were interviewed by police separately and then placed in an interview room together.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

The state court then outlined the following summary of Howard's defense:

> Howard's defense was that he was the "duped pawn" and Murphy was the "queen." To support his defense, he introduced the testimony of Tawon Woodruff, who had met Howard on a number of occasions. According to Woodruff, Howard was "weak-minded," unintelligent, and did things he did not want to do. Howard also introduced the testimony of his sister, Leslie Knight. According to Knight, Howard was slow to understand things and gullible.

As to petitioner's defense, the court stated:

> Murphy's defense was that she did not shoot Rogers, she never intended to kill him, and she never intended to rob him. Howard said he wanted to take Rogers "off the map" due to a car Rogers had stolen. Later, Howard said he was not planning on killing Rogers, just reclaiming and taking his money.

### B. Procedural History

Defendants Gerald Howard and petitioner Carmel Murphy were tried in a joint trial with separate juries and found guilty of first degree murder while armed. Petitioner was also found guilty of robbery. Petitioner was sentenced to a term of life without the possibility of parole. The conviction and sentence were affirmed in an unpublished decision issued by the California Court of Appeal on January 8, 2010, and the California Supreme Court denied direct review on April 22, 2010. On habeas review, the Sacramento County Superior Court denied relief in an opinion issued on October 15, 2010. The California Court of Appeal denied habeas relief without comment or citation on February 10, 2011, and the California Supreme Court did likewise on August 10, 2011.

## II. STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA does not, however, apply in all circumstances. When it is clear that a state court has not reached

the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742,

753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

///

///

///

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S. 510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply.  See Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous.  See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75.  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).  Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.  The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

///

## III.  DISCUSSION

Petitioner raises the following 13 claims:

| | |
|---|---|
| Ground 1 | The trial court erred by allowing "inconsistent statements" and "false testimony" from witnesses Monica Bracamonte, Victoria Bracamonte, Willie Rogers, and Stephon Williams. |
| Ground 2 | Trial counsel was ineffective for failing to adequately investigate "mitigating circumstances." |
| Ground 3 | The trial court denied a fair trial by making a "prejudicial and unfair statement." |
| Ground 4 | The trial court erred in failing to instruct the jury regarding unconsciousness and voluntary intoxication. |
| Ground 5 | The trial court and prosecution failed to properly lodge evidence. |
| Ground 6 | The trial court erred by allowing "street slang" into evidence despite a pre-trial order precluding such evidence. |
| Ground 7 | The prosecutor committed misconduct by calling petitioner a "murderer" and "liar" during opening statements and closing arguments. |
| Ground 8 | The trial court erred by failing to allow the defense to adequately confront witness Tiana Smith-Anderson. |
| Ground 9 | Appellate counsel was ineffective for failing to raise all possible claims for relief on appeal. |
| Ground 10 | The sentence of life without the possibility of parole constitutes cruel and unusual punishment. |
| Ground 11 | The evidence does not support a gun enhancement. |
| Ground 12 | The trial court erred by admitting into evidence a joint conversation between petitioner and co-defendant Howard. |
| Ground 13 | The trial court erred by failing to properly transcribe the conversation between petitioner and co-defendant Howard. |

Respondent argues that a number of claims are unexhausted and that the remaining claims should be denied on the merits.

/ / /

/ / /

### A. **Exhaustion**

Respondent argues that a number of claims raised in the instant petition are unexhausted. Under 28 U.S.C. § 2254(b), the exhaustion of available state remedies is required before claims can be granted by the federal court in a habeas corpus case. See Rose v. Lundy, 455 U.S. 509 (1982); see also Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003); Hunt v. Pliler, 336 F.3d 839 (9th Cir. 2003). Claims may be denied on the merits notwithstanding lack of exhaustion. See 28 U.S.C. § 2254(b)(2). "A petitioner may satisfy the exhaustion requirement in two ways: (1) by providing the highest state court with an opportunity to rule on the merits of the claim . . .; or (2) by showing that at the time the petitioner filed the habeas petition in federal court no state remedies are available to the petitioner and the petitioner has not deliberately by-passed the state remedies." Batchelor v. Cupp, 693 F.2d 859, 862 (9th Cir. 1982) (citations omitted). The exhaustion doctrine is based on a policy of federal and state comity, designed to give state courts the initial opportunity to correct alleged constitutional deprivations. See Picard v. Connor, 404 U.S. 270, 275 (1971); see also Rose, 455 U.S. at 518.

Regardless of whether the claim was raised on direct appeal or in a post-conviction proceeding, the exhaustion doctrine requires that each claim be fairly presented to the state's highest court. See Castille v. Peoples, 489 U.S. 346 (1989). Although the exhaustion doctrine requires only the presentation of each federal claim to the highest state court, the claims must be presented in a posture that is acceptable under state procedural rules. See Sweet v. Cupp, 640 F.2d 233 (9th Cir. 1981). Thus, an appeal or petition for post-conviction relief that is denied by the state courts on procedural grounds, where other state remedies are still available, does not exhaust the petitioner's state remedies. See Pitchess v. Davis, 421 U.S. 482, 488 (1979); Sweet, 640 F.2d at 237-89.[2]

---

[2] This situation of procedural deficiency is distinguishable from a case presented to the state court using proper procedures but where relief on the merits is precluded for some procedural reason, such as untimeliness or failure to raise the claim on direct appeal. The former represents an exhaustion problem; the latter represents a procedural default problem.

8

A review of petitioner's opening brief on direct appeal reflect that petitioner raised the following three claims:

| | | |
|---|---|---|
| Claim I | | The trial court erred by not redacting the transcript of a taped conversation between petitioner and Howard. |
| Claim II | | The trial court erred by permitting witnesses Tawon Woodruff and Leslie Knight, called by co-defendant Howard, to testify in front of petitioner's jury. |
| Claim III | | The trial court erred in imposing a parole revocation fine. |

A number of other claims were raised by Howard only. In her petition for direct review by the California Supreme Court, petitioner did not raise her claim regarding the parole revocation fine, instead focusing solely on the first two claims listed above.

In her state habeas petition filed in the Sacramento County Superior Court, petitioner raised the following 14 claims:

| | | |
|---|---|---|
| Ground 1 | | The trial court erred by allowing "inconsistent statements" and "false testimony" from witnesses Monica Bracamonte, Victoria Bracamonte, Willie Rogers, and Stephon Williams. |
| Ground 2 | | Trial counsel was ineffective for failing to adequately investigate "mitigating circumstances." |
| Ground 3 | | The trial court denied a fair trial by making a "prejudicial and unfair statement." |
| Ground 4 | | The trial court erred in failing to instruct the jury regarding unconsciousness and voluntary intoxication. |
| Ground 5 | | The trial court and prosecution failed to properly lodge evidence. |
| Ground 6 | | The trial court erred by allowing "street slang" into evidence despite a pre-trial order precluding such evidence. |
| Ground 7 | | The prosecutor committed misconduct by calling petitioner a "murderer" and "liar" during opening statements and closing arguments. |
| Ground 8 | | The trial court erred by failing to allow the defense to adequately confront witness Tiana Smith-Anderson. |
| Ground 9 | | The trial court erred by failing to award pre-sentence custody credit. |

|   |   |
|---|---|
| Ground 10 | Appellate counsel was ineffective for failing to raise all possible claims for relief on appeal. |
| Ground 11 | The sentence of life without the possibility of parole constitutes cruel and unusual punishment. |
| Ground 12 | The evidence does not support a gun enhancement. |
| Ground 13 | The trial court erred by admitting into evidence a joint conversation between petitioner and co-defendant Howard. |
| Ground 14 | The trial court erred by failing to properly transcribe the conversation between petitioner and co-defendant Howard. |

Ground 9 above is not raised in the instant federal petition. Petitioner raised the same claims as she raises in the instant federal petition in her habeas petition to the California Court of Appeal, which denied relief without comment or citation. While neither respondent nor petitioner provide a copy of any habeas petition filed in the California Supreme Court, petitioner attaches to her federal petition a copy of an August 10, 2011, order from the California Supreme Court denying habeas relief with citations to People v. Duvall, 9 Cal.4th 464, 474 (1995), and In re Swain, 34 Cal.2d 300, 304 (1949).

Based on the foregoing, the court concludes that petitioner's claims regarding admission of evidence of the taped conversation between Howard and petitioner are exhausted. These claims were presented to the California Supreme Court on direct review. None of petitioners other claims, however, is exhausted, as indicated by the California Supreme Court's citations to Duvall and Swain. The Swain citation indicates that petitioner did not "allege with particularity the facts upon which he would have a final judgment overturned." Id. Under California law, a denial of relief under Swain is without prejudice to the filing of a new state court petition which meets the requirements described in the case. See id. Because citation to In re Swain as the basis for denying a state habeas petition generally indicates that the petitioner has not alleged with particularity sufficient facts in support of his petition, and is without prejudice to the filing of a subsequent petition meeting the pleading requirements, such denials do not establish the exhaustion of available state remedies. See Kim v. Villalobos, 799 F.2d 1317, 1319

(9th Cir. 1986). However, a <u>Swain</u> denial does not per se establish that the claim is unexhausted if the federal court independently determines that the claim could not have been alleged with any greater particularity. <u>See</u> <u>id.</u> at 1320. Here, this court need not engage in this analysis because the California Supreme Court also cited to <u>Duvall</u> as a reason to deny habeas relief.

As to the state court's citation to <u>People v. Duvall</u>, that case outlines the various procedural requirements for a state habeas petition. <u>See</u> 9 Cal.4th 464, 474. Among other things, the petition must "include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of the trial transcripts and affidavits or declarations." <u>Id.</u> A failure to comply with this requirement is a pleading defect subject to cure by amendment. Here, there is no evidence that petitioner ever filed an amended petition in the California Supreme Court attempting to cure this defect. For this reason, the court finds that the <u>Duvall</u> citation is a sufficient and valid basis to conclude that the claims raised in petitioner's state habeas petitions were not exhausted in the California Supreme Court.

**B.  Merits**

For the reasons discussed above, the court finds that the only claims properly exhausted and before this court are those relating to evidence admitted at trial of the taped conversation between petitioner and Howard. The California Court of Appeal outlined the issue on direct appeal as follows:

> Murphy contends the court erred in failing to redact certain portions of the videotaped conversation between her and Howard. Specifically, she argues three paragraphs were erroneously admitted as admissions or adoptive admissions and at least eight references to the words "you" and "we" were erroneously admitted despite the rule against introduction of incriminating extrajudicial statements bo a non-testifying co-defendant.

/ / /

/ / /

/ / /

/ / /

The court then addressed whether the statements constituted an admission:

> The three paragraphs Murphy takes issue with are those she labeled paragraph 1, 2, and 18. They provide as follows:
>
> Paragraph 1: Murphy: "You going to sit here and lie, bud? You are going to sit here and lie? What happened to, 'I'm going to take the rap. I'm going to take the fall?'"
> Howard: "So what? You want me to take it all?"
>
> Paragraph 2: Murphy: "I'm going to take the rap. I'm going to take the fall. I don't care. I don't care. You got Deovion [Murphy's son]. I'm going to take the rap. I'm going to take the fall. But now I done pulled the trigger? I killed him? It's enough I got to deal with this bitch-assed nigger on the streets. I got to deal with this in here, too, now?"
>
> Paragraph 18: Murphy: "[Unintelligible]. I know they took my [Unintelligible]. The fuck is you going to do, blood? Going to tell them you have a confession to make or what?"
>
> Howard: "Not right now, [Murphy]."
>
> Murphy agrees these paragraphs "were not admissions because they were questions posed to Howard and were not express unequivocal adoptive admissions." She is wrong on the law and in her analysis.
>
> Under California law, there are only two requirements for the introduction of adoptive admissions: (1) the party must have knowledge of the content of another's hearsay statement; and (2) having such knowledge, the party must have used words or conduct indicating her adoption or belief in the truth of such hearsay statement. (citation omitted).
>
> Howard's hearsay statement was he did not pull the trigger (and, by implication, that Murphy did) and they had an arrangement where he would take the fall for the killing. Murphy's statements (at least the ones she takes issue with in paragraphs 1, 2, and 18) did not deny she pulled the trigger and admitted the existence of the arrangement. In paragraph 1, Murphy never said Howard was lying with regard to her involvement in the killing or the existence of the arrangement. In paragraphs 2 and 18, she simply asked, "I. . . pull[ed] the trigger" and "I killed him" and questioned Howard whether he was going to confess. In these excerpts, she never denied pulling the trigger or killing Rogers. On this record, the court correctly admitted the statements as adoptive admissions.

///

///

///

///

1  The court next addressed petitioner's argument that admission of the taped conversation violated

2  the rule against introducing incriminating hearsay by a non-testifying co-defendant.

> Murphy contends admission of portions of the joint conversation violated the "Aranda/Bruton" rule (citations omitted), because the court failed to excise Howard's out-of-court statements implicating Murphy in the killing. She states generally that Howard made at least eight references to the words "you" and "we" and that, under Aranda, Howard's statements "must be redacted to remove direct and indirect identifications of [her], or it must be excluded alltogether." Other than making this general reference to the words "you" and "we," Murphy points to only one example of the allegedly improper statements, i.e., Howard's first statement from the transcript, "So what" You want me to take it all?" As we explain below, Murphy applies the rule incorrectly.
> The California Supreme Court anticipated the holding of Bruton and Aranda. In Aranda, the California Supreme Court found prejudicial the practice of permitting joint trials when the confession of one defendant inculpates the other and is admitted in evidence, despite limiting instructions. (citations omitted). After the passage of Proposition 8 (Cal. Const., art. I, § 28, subd. (f)(2), former subd. (d)), the California Supreme Court held the rule of Aranda was abrogated to the extent it required exclusion of relevant evidence that did not have to be excluded under federal constitutional law. (citation omitted). Accordingly, we refer to the issue as Bruton error.
> Here, there was no Bruton error. Howard's reference to Murphy, at least in the statements she points out, was nothing more than a repetition of Howard's understanding of what Murphy had just told him, i.e., she wanted him to take the rap for everything that happened. It was Murphy who implicated herself by her adoptive admissions. As such, Bruton did not require the exclusion or redaction fo what, in essence, was Howard's parroting of Murphy's statements.

18  Under Bruton v. United States, 391 U.S. 123 (1968), the constitutional right to

19  confront an out-of-court statement is not sacrificed merely because the defendant is jointly tried

20  with the person making the out-of-court statement and the statement would be admissible against

21  that person. As the Supreme Court has made clear, the right of confrontation under the Sixth

22  Amendment only applies to testimonial statements. See Giles v. California, 554 U.S. 353, 376

23  (2008); Crawford v. Washington, 541 U.S. 36, 51 (2004). A statement is testimonial only if it is

24  made "with a primary purpose of creating an out-of-court substitute for trial testimony."

25  Michigan v. Bryant, 131 S.Ct. 1143, 1155 (2011). In this case, the statements made by Howard

26  which petitioner challenges were clearly not testimonial. As the state court noted, Howard's

statements simply reiterated what he thought the arrangement was with Murphy – that he would take the rap for her. Thus, the real source of any inculpating statements was Murphy herself, which were properly admitted under state law. Clearly, in having the conversation regarding the arrangement that Howard would take the rap for Rogers' murder, it was not Murphy's intention (or Howard's) to create a substitute for trial testimony. The court concludes that, while the statements made in the recorded conversation may certainly have been inculpating, they were not testimonial. As such, the Sixth Amendment right to confrontation does not apply and, therefore, no Bruton error occurred.

Accordingly, the court finds that the state court's rejection of petitioner's claims relating to the taped conversation was neither contrary to nor an unreasonable application of clearly established federal law, and was not based on an unreasonable interpretation of the facts.

### IV. CONCLUSION

The court notes that petitioner has filed a document captioned "Motion to Request Evidentiary Hearing and Production of Discovery." Petitioner states:

> COMES NOW PETITIONER Carmel Murphy by Writ of Habeas Corpus Petition, defendant in the above entitled action, hereby respectfully requesting the United States District Court of the Eastern District of California to grant an Evidentiary Hearing and to make determinations of factual issues addressed in the meritorious claims in the appellant's Petition for Writ of Habeas Corpus, which are unresolved and/or are deserving of review by this Court.

Petitioner provided no analysis or otherwise discusses why an evidentiary hearing or order for discovery would be appropriate in this case. Therefore, petitioner's conclusory motion should be denied.

///
///
///
///

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus be denied and that all pending motions be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: August 23, 2012

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE